Charlotte H. Foster v. Commissioner.
Foster v. Commissioner
Docket No. 112784.
United States Tax Court
1943 Tax Ct. Memo LEXIS 171; 2 T.C.M. (CCH) 535; T.C.M. (RIA) 43363; July 29, 1943
*171 Walter R. Bullock, C.P.A., 31 Nassau St., New York City, for the petitioner. Ellyne E. Strickland, Esq., for the respondent. HARRON Respondent determined a deficiency in income tax for the year 1940 in the amount of $688.58. The sole question is whether certain securities owned by petitioner became worthless during the taxable year within the terms of section 23(k)(2) of the Internal Revenue Code as amended by section 124 of the Revenue Act of 1942. Memorandum Opinion HARRON, Judge: The facts have been stipulated, the material part being as follows: [The Facts] Petitioner is an individual residing at Hillsdale, New York. Petitioner filed her income tax return for the year 1940 with the Collector of Internal Revenue for the Second Collection District of New York. Petitioner keeps her books and prepares her income tax returns on the basis of cash receipts and disbursements. In 1936 petitioner acquired at a cost of $5,250.00 five units of Bondholders Reconstruction Corporation, each unit consisting of a debenture bond of a face value of $1,000.00, due in 1956, bearing interest at 6%, and ten shares of capital stock having a par value of $1.00 per share. In 1937 petitioner *172 acquired at a cost of $5,250.00 five units of Arbitrage & Trading Corporation, each unit consisting of a debenture bond of a face value of $1,000.00, due in 1957, bearing interest at 6%, and ten shares of capital stock having a par value of $1.00 per share. Both of the above-named corporations were investment trusts, managed by Dresser & Escher, investment dealers, of 111 Broadway, New York, New York. * * *
In the early part of the year 1940 each corporation sold all of the securities in its portfolio and took steps to liquidate its assets. Certificates of dissolution were filed in March 1940. The conversion into cash of such securities did not furnish a sum sufficient to retire at face value the debentures of either corporation, and neither of the two corporations had any other assets. With respect to each of its $1,000.00 debentures, the Bondholders Reconstruction Corporation distributed the sum of $418.77 in March 1940, and the sum of $87.75 in April 1941. The first distribution was characterized as "First Liquidating Dividend in Complete Dissolution." With respect to each of its $1,000.00 debentures, the Arbitrage & Trading Corporation distributed the sum of $463.59 in March *173 1940, and the sum of $96.26 in April 1941. The first distribution was characterized as "First Liquidating Dividend in Complete Dissolution." Petitioner received the following distributions in liquidation: Bondholders
Reconstruc-
Arbitrage &
tion Corp.
Trading Corp.
March 1940 - First
Liquidating Dis-
tribution
$2,093.85
$2,317.95
April 1941 - Final
Liquidating Dis-
tribution
438.75
481.30
$2,532.60
$2,799.25
Payment of the final liquidating dividend was held up by each corporation during the year 1940 pending audit of its Federal and State tax returns. Under date of September 13, 1940, both of the above-named corporations addressed a letter to the Collector of Internal Revenue calling attention to previous requests and again requesting an early examination of their income tax returns, it being stated that the two corporations had been partially dissolved and final distribution could not be made until the income tax returns had been approved. Under date of November 12, 1940, Arbitrage & Trading Corporation was advised by the Internal Revenue Agent in Charge, Second New York Division, that as a result of the examination of its income tax returns filed *174 for the fiscal year ended June 30, 1938, and for the period ended April 30, 1940, the returns had been accepted as filed; and that in respect of the return filed for the fiscal year ended June 30, 1939, a deficiency of $31.05 had been determined. The deficiency of $31.05 was paid by Arbitrage & Trading Corporation in December 1940, which additional tax resulted from the Commissioner's limiting to $2,000.00 the taxpayer's loss from the sale of securities, in accordance with the provisions of section 117 of the Revenue Act of 1938. Under date of November 22, 1940, Bondholders Reconstruction Corporation was advised by the Internal Revenue Agent in Charge, Second New York Division, that as a result of the examination of its income tax returns filed for the fiscal years ended February 28, 1937, February 28, 1938, and February 29, 1940, the returns had been accepted as filed; that in respect of the return for the fiscal year ended February 28, 1939, a deficiency of $327.60 had previously been determined and assessed. The deficiency of $327.60 was paid by Bondholders Reconstruction Corporation in May, 1940, which additional tax resulted from the disallowance by the Commissioner of accrued *175 interest expense in the amount of $2,340.00. Petitioner deducted the amounts of $1,578.08 and $1,466.02 on her return for the taxable year as long-term capital losses in respect to each of the five units of bonds and stock of the Bondholders Reconstruction Corporation and the Arbitrage & Trading Corporation, respectively, as having become worthless during the year 1940. Respondent disallowed these deductions as he determined that petitioner "sustained no deductible loss in the year 1940 in respect of the aforesaid securities." [Opinion] On brief, respondent contends that the deductions for long-term capital losses should be taken by petitioner in the year 1941 when the final liquidating distribution was made by each corporation and the amount of the loss was definitely ascertained. This contention must be sustained. It has been well established since the enactment of the Internal Revenue Act of 1938 that no deduction is allowable on account of partial worthlessness with respect to a debt evidenced by a bond, debenture, note, or other evidences of indebtedness issued by a corporation. Mertens, Law of Federal Income Taxation, Vol. 5, Sec. 30.71, page 453. The applicable statute *176 is section 23(k)(2) of the Internal Revenue Code, as amended by Section 124 of the Revenue Act of 1942. [1] Under the amendment, the test of deductibility is actual worthlessness of the bond or debenture within the taxable year. The question thus resolves itself to whether petitioner's bonds had any value at the end of 1940. *177 The record indicates that on December 31, 1940, the Bondholders Reconstruction Corporation had outstanding 78 debenture bonds. It retained the amount of $6,844.50 during the year 1941 until the date of final distribution. On December 31, 1940, the Arbitrage & Trading Corporation had outstanding 90 debenture bonds. It retained the sum of $8,633.40 during the year 1941 until the date of final distribution. The amounts so retained by each corporation were greatly in excess of any probable additional tax assessment or any outstanding liability other than that due to the bondholders. In April 1941, petitioner received a final liquidating distribution of $438.75 from the Bondholders Reconstruction Corporation and a final liquidating distribution of $481.30 from the Arbitrage & Trading Corporation. Under the circumstances, it cannot be said that petitioner's bonds were worthless in 1940. The only case relied upon by petitioner is Beekman Winthrop, 36 B.T.A. 314; affd., 98 Fed. (2d) 74, which is distinguishable. That case involved a loss upon the liquidation of a stock interest in a corporation and not a loss on bonds or securities *178 within the definition of section 23(k)(3) of the Internal Revenue Code as amended by section 124 of the Revenue Act of 1942. It is therefore held that the bonds owned by petitioner did not become worthless in 1940 and she did not sustain a capital loss in that year. It has been stipulated by the parties that the sum of $819.85, which was paid by petitioner in 1940 in connection with the management, conservation, and maintenance of property held for the production of income, is allowable as a deduction from income for 1940, and that the balance of the item of $876.45 shown in the deficiency notice was properly disallowed. Accordingly, Decision will be entered under Rule 50. Footnotes
1. SEC. 124. DEDUCTION FOR BAD DEBTS, ETC. (a) General Rule. - Section 23 (k) (relating to bad debts and securities becoming worthless) is amended to read as follows: "(k) Bad Debts. - "(1) General Rule. - Debts which become worthless within the taxable year; or (in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part which becomes worthless within the taxable year, as a deduction. This paragraph shall not apply in the case of a taxpayer, other than a bank, as defined in section 104, with respect to a debt evidenced by a security as defined in paragraph (3) of this subsection. This paragraph shall not apply in the case of a taxpayer, other than a corporation, with respect to a non-business debt, as defined in paragraph (4) of this subsection. "(2) Securities becoming worthless. - If any securities (as defined in paragraph (3) of this subsection) become worthless within the taxable year and are capital assets, the loss resulting therefrom shall, in the case of a taxpayer other than a bank, as defined in section 104, for the purposes of this chapter, be considered as a loss from the sale or exchange, on the last day of such taxable year, of capital assets. "(3) Definition of securities. - As used in paragraphs (1), (2), and (4) of this subsection the term 'securities' means bonds, debentures, notes, or certificates, or other evidences of indebtedness, issued by any corporation (including those issued by a government or political subdivision thereof), with interest coupons or in registered form.↩